# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## WINCHESTER DIVISION

JESSE ANTHONY ROBERTS,      )
                                     )
       Plaintiff                  )
                                       )
vs.                                   )      File No. 2780
                                       )
**AMCO INSURANCE**           )
**COMPANY, et al**            )
                                       )
       Defendants.             )

## NOTICE OF REMOVAL OF CIVIL ACTION

To the Honorable Judge of the United States District Court Eastern District of Tennessee. AMCO Insurance Company respectfully states as follows:

1.      The above styled action was filed on July 2, 2007 in the Circuit Court of Warren County naming AMCO Insurance Company as a defendant along with Nationwide Insurance Sales, LLC, Allied Insurance and Hoover and Son Insurance. There was not complete diversity of citizenship. Eventually all defendants were served on or before February 20, 2008, and a Motion to Dismiss was filed by the defendants, Hoover & Son Insurance Agency, Allied Insurance Company and Nationwide Insurance Sales, LLC. On April 22, 2008, an Order was entered in the Circuit Court of Warren County on April 22, 2008 dismissing all defendants with the exception of AMCO Insurance Company of Des Moines, Iowa thereby creating a diversity of citizenship. AMCO Insurance Company was given 30 days from April 22, 2008 to file a responsive pleading.

2.     No further proceedings have been had in the Circuit Court for Warren County, Tennessee except as hereinabove set forth.

3.     The above-entitled cause of action is a civil action relating to a homeowner's insurance policy.

4.     The Plaintiff is an individual with his principal residence in Warren County, Tennessee

5.     The Defendant is an Iowa corporation, with its home office in Des Moines, Iowa.

6.     The amount in controversy is in excess of $75,000, exclusive of interest and costs.

7.     Diversity of citizenship exists; the requisite amount in controversy exists. This Court therefore has original jurisdiction in the above-entitled action pursuant to 28 U.S.C. 1332.

8.     A copy of the summons and the Complaint served upon the Defendant in the above-entitled action are collectively attached hereto as Exhibit "A", along with all the process, pleadings and orders served on the Defendant in the above State Court action.

9.     Pursuant to 28 U.S.C. 1446 (b), this Petition is filed with the Court within 30 days after the order was entered dismissing all parties with the exception of AMCO Insurance Company thereby creating a diversity of citizenship. The complaint in this matter was filed on July 2, 2007, and this petition for removal is filed within one (1) year of the filing of the original complaint after complete diversity of citizenship was established.

WHEREFORE, Notice is hereby given that the above-entitled action is removed from the Circuit Court of Warren County, Tennessee, to the United States District Court Eastern District of Tennessee, Winchester Division.

Date this _13th_ day of May, 2008.

_James D. Madewell_
James D. Madewell (#3337)
**Madewell, Jared, Halfacre & Williams**
230 North Washington Avenue
P. O. Box 721
Cookeville, TN 38501
(931) 526-6101
Fax: (931) 528-1909
Attorney for Defendant
Amco Insurance Company

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a copy of the foregoing has been furnished to Bud Sharp, 100 Center Street, Suite B, McMinnville, TN 37110, by placing same in the United States Mail, postage prepaid, this the _13th_ day of May, 2008.

_James D. Madewell_
James D. Madewell

3



FILED

FEB 2 7 2008

_____Time_____Initials
BERNADETTE W. MORRIS
CIRCUIT COURT CLERK

STATE OF TENNESSEE
DEPARTMENT OF COMMERCE AND INSURANCE
500 JAMES ROBERTSON PARKWAY
NASHVILLE, TN 37243-1131

February 25, 2008

Amco Insurance Company
1100 Locust Street
Des Moines, IA 50391-1100
NAIC # 19100

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7006 2760 0002 9674 2785
Cashier # 1779

Re: Jesse Anthony Roberts  V.  Amco Insurance Company

Docket # 2780

To Whom It May Concern:

We are enclosing herewith a document that has been served on this department on your behalf in connection with the above-styled matter.

I hereby make oath that the attached Complaint was served on me on February 20, 2008 by Jesse Anthony Roberts pursuant to Tenn. Code Ann. § 56-2-504 or § 56-2-506. A copy of this document is being sent to the Circuit Court of Warren County, TN.

Brenda C. Meade
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Warren County
    P O Box 639
    Mcminnville, Tn 37110

Service of Process 615.532.5260

# State of Tennessee
# Circuit Court of Warren County, Tennessee

JESSE ANTHONY ROBERTS
PLAINTIFF

**ALIAS**

**CIVIL SUMMONS**

vs

No: __2780__

AMCO INSURANCE COMPANY
A DIVISION OF ALLIED INSURANCE
ATTN: LEGAL DEPARTMENT
1100 LOCUST STREET
DES MOINES, IA  50391-0301
Defendants

**FILED**

FEB 1 3 2008

_____Time_____Initials
BERNADETTE W. MORRIS
CIRCUIT COURT CLERK

To the above named defendant (s):

You are hereby summoned and required to serve upon Bud Sharp, plaintiff's attorney, whose address is 100 Center Street, Suite B, McMinnville, Tennessee, an answer to the complaint which is hereby served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service, and file a copy of the answer with this court with ten (10) days after answer is made. If you fail to do so, judgment by default will be taken against you for relief demanded in this petition.

Witness, Bernadette Morris, Clerk of said Court, at office McMinnville, Tennessee, this __13__ day of __February__, 2008.

_____
Clerk

By: _____
Deputy Clerk

Received this_____day of_____, 2008.

_____
Sheriff-Deputy Sheriff

## RETURN ON SERVICE OF SUMMONS

I hereby certify and return, that on _____ day of _____, 2008, I served this summons together with a copy of the compliant herein as follows:_____

_____

_____

_____
Sheriff-Deputy Sheriff

THIS SUMMONS IS ISSUED PURSANT TO RULE 4 OF THE TENNESSEE RULES OF CIVIL PROCEDURE

# State of Tennessee
# Circuit Court of Warren County, Tennessee

JESSE ANTHONY ROBERTS
PLAINTIFF

vs

AMCO INSURANCE COMPANY
A DIVISION OF ALLIED INSURANCE
ATTN: LEGAL DEPARTMENT
1100 LOCUST STREET
DES MOINES, IA 50391-0301
Defendants

**ALIAS**

**CIVIL SUMMONS**

No: 2780

F I L E D

FEB 1 3 2008

Time_____Initials
BERNADETTE W. MORRIS
CIRCUIT COURT CLERK

To the above named defendant (s):

You are hereby summoned and required to serve upon Bud Sharp, plaintiff's attorney, whose address is 100 Center Street, Suite B, McMinnville, Tennessee, an answer to the complaint which is hereby served upon you within thirty (30) days after service of this summons upon you, exclusive of the day of service, and file a copy of the answer with this court with ten (10) days after answer is made. If you fail to do so, judgment by default will be taken against you for relief demanded in this petition.

Witness, Bernadette Morris, Clerk of said Court, at office McMinnville, Tennessee, this _13_ day of _February_, 2008.

_____ Clerk

By:_____
Deputy Clerk

Received this_____day of _____, 2008.

_____
Sheriff-Deputy Sheriff

## RETURN ON SERVICE OF SUMMONS

I hereby certify and return, that on _____ day of _____, 2008, I served this summons together with a copy of the compliant herein as follows:_____

_____
_____

_____
Sheriff-Deputy Sheriff

THIS SUMMONS IS ISSUED PURSANT TO RULE 4 OF THE TENNESSEE RULES OF CIVIL PROCEDURE

IN THE CIRCUIT COURT OF WARREN COUNTY, TENNESSEE

SITTING IN MCMINNVILLE

**FILED**

JUL 0 2 2007

Time_____Initials
BERNADETTE W. MORRIS
CIRCUIT COURT CLERK

JESSE ANTHONY ROBERTS

Plaintiff,

vs.

NATIONWIDE INSURANCE SALES, LLC,
ALLIED INSURANCE, AMCO INSURANCE
COMPANY, and HOOVER AND SON
INSURANCE

Defendants.

Civil Action No. 2,7 8D

---

## COMPLAINT

---

Plaintiff sues the defendant and shows the court as follows:

1. Defendant is an insurance company, incorporated under the laws of the State of Ohio.
Defendant has qualified to and does business in the State of Tennessee in marketing,
sales and service of fire insurance policies and is therefore subject to the jurisdiction of
this court.

2. On or about July 10, 2006, Defendant insured Plaintiff's dwelling house against loss or
injury by fire and other perils in a policy of insurance number HA·0010037245-1 with a
policy term from July 28, 2006 to July 28, 2007.

3. The said dwelling house was wholly destroyed by fire on the 30th day of October
2006, of which Defendant has had notice.

4. Although Plaintiff has performed all conditions precedent to his right of recovery
under the said policy of fire insurance, the Defendant has failed and refused to make
payment to the plaintiff.

5. The failure of the Defendant to pay the Plaintiff under the policy is and has been
without justification; the payment has been withheld from the Plaintiff in bad faith, which
has necessitated the Plaintiff's incurring expenses of an attorney and other expenses.
Accordingly, defendant owes Plaintiff, in addition to the amount of the policy, an

6. Plaintiff reserves the right to amend this complaint as necessary.

WHEREFORE, Plaintiff demands judgment against the Defendant for $154,540.00 plus an additional amount equal to twenty-five percent (25%) of the face amount of the policy, together with interest, costs, and attorney fees.

Bud Sharp

Attorney for Plaintiff
BPR No.024183
100 Center Street, Suite B
McMinnville, TN 37110
(931) 474-4357

## CERTIFICATE OF SERVICE

I hereby certify that a true and exact copy of the foregoing document was served upon the Tennessee Secretary of State, Division of Services, Suite 1800, James K. Polk Building, Nashville, TN 37243, by placing a copy of same in the United States mail, postage prepaid or by hand delivery.

This 2nd day of July 2007

Bud Sharp
Attorney for Appellant

JESSE ANTHONY ROBERTS,

Plaintiff,

Vs.

NATIONWIDE INSURANCE SALES,
LLC, ALLIED INSURANCE, AMCO
INSURANCE COMPANY AND HOOVER
& SON INSURANCE,

Defendants.

Case No. 2780

```
FILED

APR 2 2 2008

Time_____Initials
BERNADETTE W. MORRIS
CIRCUIT COURT CLERK
```

## AGREED ORDER

Come your parties and would announce to the Court that they have reached an agreement to dismiss Nationwide Insurance Sales, LLC, Allied Insurance, and Hoover & Son Insurance from the above titled case. AMCO Insurance Company shall remain the Defendant in this matter and shall have thirty (30) days to file a responsive pleading. It is hereby,

**ORDERED, ADJUDGED**, and **DECREED**

1. That Nationwide Insurance Sales, LLC, Allied Insurance, and Hoover & Son Insurance shall be dismissed from the above titled case.

2. That AMCO Insurance Company shall remain the Defendant in this matter and shall have thirty (30) days to file a responsive pleading.

4-22-8

_____
Larry B. Stanley, Judge

APPROVED FOR ENTRY:

_Bud Sharp_
Bud Sharp, BPR #024183
Attorney for Plaintiff
100 Center Street, Suite B
McMinnville, TN. 37110
(931) 474-4357

James D. Madewell by
James D. Madewell, BPR #3337
Attorney for Defendant     permission
230 North Washington Ave.
P.O. Box 721
Cookeville, TN 38503-0721
(931) 526-6101

IN THE CIRCUIT COURT OF WARREN COUNTY, TENNESSEE

| | | |
|---|---|---|
| JESSE ANTHONY ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 2780 |
| | ) | Jury Demanded |
| NATIONWIDE INSURANCE SALES, LLC, | ) | |
| ALLIED INSURANCE, AMCO INSURANCE | ) | |
| COMPANY, and HOOVER AND SON | ) | |
| INSURANCE, | ) | |
| | ) | |
| Defendants. | ) | |

## MOTION TO DISMISS

Come now the defendants, Hoover & Son Insurance Agency, Allied Insurance Company, and Nationwide Mutual Insurance Company, and move this Court, in accordance with Rule 12.02(6) of the Tennessee Rules of Civil Procedure, to dismiss the case as to these defendants for the plaintiff's failure to state a claim upon which relief can be granted. In support of this motion, the defendants attach hereto a certified copy of the AMCO Insurance Company Homeowner's Policy along with the declarations pages as Exhibit A. and a Brief attached as Exhibit B.

Respectfully submitted,

MADEWELL, JARED, HALFACRE & WILLIAMS

By _____
James D. Madewell (#3337)
Attorney for Defendants
230 North Washington Avenue
Post Office Box 721
Cookeville, Tn 38503-0721
(931) 526-6101

### CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document has been delivered to all counsel for parties at interest in this cause by placing a true and correct copy of same in the United States Mail, postage prepaid, in a properly addressed envelope to: Mr. Bud Sharp, Attorney for Plaintiff, 100 Center Street, Suite B, McMinnville, TN 37110

This the 15th day of April, 2008.

_____
Attorney

# CERTIFIED POLICY

6341 20 004333 10302006 01
Roberts, Anthony

State of Iowa )
 )      ss.
County of Polk )

I, *Keith Hoppe*, *Personal* Lines Manager for
*Amco Assurance Co*, upon my oath depose and state that the

attached policy forms and endorsements are true, accurate and certified copies of policy

*HA 0010037345*. I further state that this same policy was in effect on

*10-30-2006*.

~~*X. O. Th*~~

*Personal* Lines Manager
*Amco Assurance Co*

Subscribed and sworn before me, a notary public in and for the State of Iowa, this

*22* day of *August*, 20 *07*.

*Amy Eckert*
Notary Public

Enclosure

AMY S. ECKERT
COMMISSION NO. 223813
MY COMMISSION EXPIRES
JULY 30, 20XX
IOWA

M./Pl. Dept/Certified Policy Letter



**Allied**
Insurance
a Nationwide® company
On Your Side™

AGENCY - TN - 21792
HOOVER & SON INSURANCE
MC MINNVILLE TN
931-473-2200

AMCO INSURANCE COMPANY
1100 LOCUST ST
DES MOINES IA
50391-1100

ROBERTS, ANTHONY

629 HENNESSEE AVE
MORRISON, TN  37357-5847

**HOMEOWNERS POLICY NUMBER**
HA  0010037245-1

**ACCOUNT NUMBER**
927065748

### Thank you for selecting Allied Insurance for your insurance needs!

Allied is committed to providing you high quality insurance protection along with Premier Service - our pledge to provide superior customer service. You can also count on Allied for a full range of personal insurance needs: automobile, homeowners, recreational vehicles, rental properties, personal umbrella liability and boat insurance.

For more than 70 years, Allied has provided reliable, affordable personal insurance protection. We have a long-standing history of excellent value and service - a tradition you can count on. Allied is rated "A+" (Superior) by A.M. Best Company, an independent insurance rating organization.

**For billing questions or to report a claim . . . . Call 1-800-282-9445 from anywhere in the U.S.**

- Monday through Friday  8:00 a.m. - 5:30 p.m. (CST)
- To report a claim, simply call our toll-free number above any day, 24 hours a day.

**Information about your policy. . . .**

- **PRIVACY STATEMENT PROCEDURES. We value you as a customer and respect your right to privacy. Please see the enclosed Privacy Statement and Procedures Notice directly following this page for additional information.**
- **Special Notices.** These notices, when included, point out specific items concerning your policy.
- **Coverage and Endorsement Forms.** Provides policy and coverage information.
- **Billing.** Any premiums that are unpaid will be billed separately. Pay from that bill rather than this policy.

## YOUR DISCOUNTS . . . .

Your premium shown on the declarations page reflects savings because you qualified for these discounts or special rating. For information on qualifying for additional discounts, contact your agent.

DISCOUNTS APPLIED
New Home Credit - Credit for owning a newer home.
Protective Device - burglar, fire or smoke alarm system.
Financial Stability Discount    5.0%

DISCOUNTS AVAILABLE
New Home Credit - Credit for owning a newer home.
Multi-Policy - Qualifying home and auto policy with us
Protective Device - burglar, fire or smoke alarm system
Senior Citizen Discount
Financial Stability Discount

If you have any questions or changes regarding your policy or want to find out how we can further serve your personal insurance needs, contact your Allied agent. In addition, you can also review your policy and payment history online at **myAlliedPolicy.com.** This personalized Web site is tailored to your individual needs, providing easy access to your policy every day, 24 hours a day.

JL0201 (08-02)

DIRECT BILL    LFYZ  07227

R    927065748    71    68

## PROPERTY COVERAGE AND RATING INFORMATION

Please advise immediately if this information is incorrect.

### OCCUPATION

ROBERTS, ANTHONY                    MAILROOM

**CONSTRUCTION:** MASONRY

**YEAR BUILT:**    1978

**PRIOR LOSSES:**  01/01/1000  MOTHER MOWING YARD & PUSHED GAS ON LAWNMOWE
                   04/28/1999  MED PY/MOTHER MOWING YARD HIT GARAGE          $575
                   06/15/2002                            $1,089
                   10/14/2004                            $192

**POOL/HOT TUB/SPA ON PREMISES?**   No

**AUXILIARY HEATING?**   No

**PETS?**    No

**TRAMPOLINE ON PREMISES?**   No

**BUSINESS ON PREMISES?**   No

**DEADBOLT LOCKS?**   Yes

**SMOKE DETECTOR?**   Yes

**FARMING OPERATIONS?**   No

JL0201 (08-02)

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 16 of 72   PageID #: 16

## PRIVACY STATEMENT

We value you as a customer and respect your right to privacy. We know that you purchase our products and services because you trust that we stand behind our promises. We pledge our commitment to treat your information responsibly, and we created this privacy policy to show you that we are working hard to protect your privacy.

### Confidentiality and security

We use physical and technical safeguards to protect your information. We restrict access to your information to those who need it to perform their jobs. Third-party business partners are bound by law to use the information only for our purposes. They may not disclose it or use it in any other way. We comply with all data security laws.

### Collecting your personal information

We collect personal information about you from different sources. For example, we collect information you send us on applications and forms. We also collect information from your transactions with our sister companies, others, or us. We may collect information from a consumer-reporting agency, demographic firm, or medical provider. This collection depends on the product or service you request.

### Sharing your personal information

We do not sell your information to anyone. We may share this information with a business that carries out services and marketing for us, like your broker or independent agent. We may share your information as required or permitted by law. We may share your information for a legal or regulatory purpose or to combat fraud. These include the following types of information.

- We may share information we receive from you on applications or other forms. This may include your name, address, beneficiaries, Social Security number and family member information. This may also include assets, income, and the property address and value.

- This may include information from your transactions with our sister companies, or us. It may include your account balance, policy coverage, and payment history. It may also include premium paid, preferences, shares you purchase, claims, and purchase method.

- We may share information we receive from a consumer-reporting agency or other report. This may include, your credit report, motor vehicle and driver data. This may also include medical and employment data, loss history reports, and other driver data. This sharing depends on the products you select.

### Information sharing and opt out

You received this privacy statement because you purchased a financial or insurance product from an independent broker or independent agent. We do not sell customer information for marketing purposes. Because you are a customer of both us and the independent broker or independent agent, we have chosen not to share your personal information to anyone for any reason, except to service your product. These reasons are described in more detail above and are permitted by federal and state law. Therefore, there is no need for you to opt out. If we change our sharing policy, we will tell you and give you a chance to opt out before we share your information.

Please note: if you also purchased one of our financial or insurance products from a different agent or producer that does allow us to share your information, you will receive another privacy statement with instructions about how to opt out of information sharing.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 17 of 72   PageID #: 17

## Using your medical information

Sometimes, we must collect medical information to provide you a product or to pay a claim. We do not use or share your medical information for any marketing purpose, unless we receive your permission. We use medical information when:

- Underwriting insurance
- Servicing your policy, account, or claim
- As required or permitted by law
- At your request and with your authorization

## Questions

We value our customers and want you to understand how we use the information we collect. Please contact us if you have any questions about our privacy policy.

We will provide you a copy of your personal information that we control and can reasonably retrieve. To access your information, you must provide the following:

1. All policy numbers you want to access.

2. Please sign your request and have your signature notarized. This ensures the identity of the person requesting the information.

We do not currently charge a fee to cover the cost of providing you with a copy of this information. However, we reserve the right to charge a small fee in the future. You may request that we correct your personal information in our files. Please note that we do not control information provided by third parties. So, you will need to contact the third party to correct any information from them. Sometimes we obtain your consumer or credit report. If so, you may request the credit-reporting agency's name and address. You may ask the agency to give you a copy of your report.

**Please send any privacy inquiries to:**

Allied Insurance
Attention Customer Relations - Privacy
One Nationwide Plaza, 1-5-28
Columbus, Ohio 43215

When you write to us, please include your name, address, and policy number, and your agent's name and number, if you know it. You can contact your agent to change information that we control, such as your address. Or, you may contact your Allied customer service representative. The phone number is in your policy packet.

This privacy statement describes our privacy practices for both current and former customers. We will provide one copy of this notice to joint policy or contract holders. Please share this information with everyone covered by your policy or contract. If you request, we will send more copies of this statement.

Thank you for choosing Allied Insurance. *On Your Side* SM service

This privacy statement is made on behalf of Allied Insurance and its affiliates and subsidiaries, which include the companies that offer auto, home, property, life insurance, banking services and investments. This includes the following companies:

Allied Property and Casualty Insurance Company
AMCO Insurance Company
Depositors Insurance Company
Nationwide Mutual Insurance Company
Nationwide Agribusiness Insurance Company
Colonial County Mutual Insurance Company
Nationwide Insurance Company of America
Nationwide Affinity Insurance Company of America

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 18 of 72   PageID #: 18

★ ★ ★ ★ ★ ★     IMPORTANT INSURANCE INFORMATION     ★ ★ ★ ★ ★ ★

Thank you for choosing Allied Insurance for your insurance protection. Our business is to provide you with exceptional protection, great value, excellent claims service and Premier customer service. As a part of our Premier customer service, we now have an appeal process in place to review how our rating system has been applied in connection with your insurance coverage.

What Do You Need To Do If You Want A Review?
Because your Allied Insurance agent is committed to answering your questions or concerns on our rating system, we suggest you contact your agent and ask for help with answers to your questions.

If you have questions or concerns your Allied agent cannot answer or if you wish to contact us directly, please send a written request to the following address:

Allied Insurance
Central States Regional Office
1100 Locust Street, Dept. 0800
Des Moines, IA 50391-0800

What If We Fail To Respond?
If Allied fails to grant or rejects the written request within 30 days of receiving the request, you may treat the refusal to grant or reject the appeal as a rejection of the request and proceed with a direct appeal to the Insurance Commissioner.

**Thank you for placing your trust in us.** *Nationwide Is On Your Side.*[SM]

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 19 of 72   PageID #: 19

★★★★★★★★  IMPORTANT INSURANCE INFORMATION  ★★★★★★★★★ 

Due to your risk characteristics, your homeowner coverage will be moved from
**DEPOSITORS INSURANCE COMPANY**

Your current policy will expire effective the hour and date shown below, and will be renewed in
**AMCO INSURANCE COMPANY**

> Policy No. **HMX 0010037245**
> Expiration is effective on **07/28/06**    at 12:01 A.M. Standard Time

This change will not affect your coverage. Your new policy is enclosed.

**IN 2291 (03-03)**

★ ★ ★ ★ ★ ★ ★   IMPORTANT INSURANCE INFORMATION   ★ ★ ★ ★ ★ ★ ★

## MERIT RATING REVISION

Please be advised that we have revised our Homeowners Merit Rating program in your state.

A merit rating surcharge will be applied to (1) any chargeable loss within the three-year period prior to the policy effective date where a payment greater than $500 was made or (2) any combination of two or more chargeable losses within the three-year period prior to the policy effective date regardless of the payment amount. A loss is considered to be chargeable if there has been a payment made, if the cause of loss for the claim is assigned at least one merit point and if the loss occurred on or after March 1, 2003. If no payment has been made or if there is not a merit point charge associated with the cause of loss, no surcharge will be applied.

In the event your homeowners policy is surcharged, your policy declarations will display the points being charged.

Should you have any questions about this notice or your policy in general, please contact your agent.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 21 of 72   PageID #: 21

★ ★ ★ ★ ★ ★ ★     IMPORTANT INSURANCE INFORMATION     ★ ★ ★ ★ ★ ★ ★

## FAIR CREDIT REPORTING ACT AND TENNESSEE NOTICE REQUIREMENTS

Thank you for choosing Allied for your insurance needs. At Allied Insurance, our business is to provide you with exceptional protection, great value, excellent claims service and Premier customer service.

Insurance scoring is just one factor that provides an objective, accurate and consistent tool that insurers use, along with other applicant information, to better anticipate claims. By more accurately anticipating claims, we can better control risk, enabling us to offer insurance coverage to our policyholders at a more competitive cost. Insurance scoring is based on information from consumer credit reports.

Based on information received from a consumer credit report, your policy or premium has been adversely affected. As a result, the rate for your insurance coverage is higher than our lowest available rate. In accordance with Tennessee Senate Bill 2259 you are provided with the following factors relative to your credit history that may have affected your insurance score:

**Time since most recent collection agency filing reported**
**Account with a reported delinquency status including bad debt**
**Insufficient information on bank revolving accounts**
**% of open personal finance accounts to total open accounts**

The consumer reporting agency did not make the decision to take this action and is unable to provide you with the specific reason why the action was taken. The Fair Credit Reporting Act provides you with the right to obtain a free copy of the report from the consumer reporting agency by request within 60 days of the receipt of this notice. You have the right to dispute the accuracy or completeness of any information contained in the report with the consumer reporting agency.

To obtain a copy of your report(s), please contact the consumer reporting agency(ies) below:

**Credit Report:**

ChoicePoint Consumer Center
P.O. Box 105108
Atlanta, GA 30348
Telephone No.: 1-800-456-6004

Case 4:08-cv-00039-SKL    Document 1    Filed 05/14/08    Page 22 of 72    PageID #: 22

★ ★ ★ ★ ★ ★ ★   IMPORTANT INSURANCE INFORMATION   ★ ★ ★ ★ ★ ★ ★

## Special Provisions Revision

Please be advised that on the Special Provisions endorsement, revisions have been made to **DEFINITIONS, SECTION I – PROPERTY COVERAGES, SECTION I – PERILS INSURED AGAINST, SECTION I – CONDITIONS and SECTION I AND II - CONDITIONS.**

For all forms, the definition of "Named Insured" has been added and is defined as the first listed "insured" on the policy.

For the HO 2, HO 3 and HO 5 contracts, under **SECTION I – PROPERTY COVERAGES, C. 3. Special Limits of Liability** and **C. 4. Property Not Covered** we have revised the limit we will pay for tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle to $300 in any one loss, regardless of the number of such items.

We have also broadened coverage for vehicles or conveyances not subject to motor vehicle registration to include a motorized golf cart while being operated to or from, or on the premises of a golf course.

For the HO 3 and HO 5 contracts under **SECTION I – PERILS INSURED AGAINST**, item **2.c.6)g)** (item **A.2.e.7**) in HO 5) has been revised to clarify we do not cover losses caused by animals owned or kept by an insured.

For the HO 2, HO 3 and HO 5 contracts, under **SECTIONS I – CONDITIONS**, item **C.2.c.** has been revised to state that a claim and repairs/replacement must be made within 1 year of the date of loss, unless an extension is requested in writing. An extension of 180 days is allowed.

This revision also states that repair or replacement must be evidenced by the original of the replacement receipt, invoice or bill. Also, the applicable limit of liability under the policy must not be reached in order for payment to be made.

For the HO 6 contract under **SECTION I - CONDITIONS**, item **F. Other Insurance and Service Agreement** has been revised to clarify that Other Insurance or Service Agreement in the name of a corporation or association of property owners will be the primary coverage.

For all forms under **SECTION I AND II – CONDITIONS**, items **C. Cancellation** and **D. Nonrenewal** have been revised to replace "you" and "your" with "named insured".

Should you have any questions about this notice or your policy in general, please contact your agent.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 23 of 72   PageID #: 23

# HOMEOWNERS POLICY

**AMCO INSURANCE COMPANY**
1100 LOCUST ST
DES MOINES IA          50391-1100
(800) 282-1446

| POLICY NUMBER: | HA 0010037245-1 |
| ACCOUNT NUMBER: | 927065748 |

| AGENCY | **HOOVER & SON INSURANCE**<br>**MC MINNVILLE TN** |

| Policy Period |
| From: 07-28-06    To: 07-28-07 |
| 12:01 A.M. Standard Time |
| Effective Date of Change<br>**103006** |

NAME INSURED AND ADDRESS

**ROBERTS, ANTHONY**

**629 HENNESSEE AVE**
**MORRISON, TN**          37357-5847

The described residence premises covered hereunder is located at the above address, unless otherwise stated herein. (No., Street, City, State, Zip Code)

| PREVIOUS POLICY NUMBER | HMX 0010037245-2 |

**UNITED STATES OF AMERICA**
**ATTRHS OISA**
**PO BOX 66876**
**ST LOUIS, MO**          63166-6876

## COVERAGE AND LIMITS OF LIABILITY

| SECTION I | | | | SECTION II | |
| A. DWELLING | B. OTHER STRUCTURES | C. PERSONAL PROPERTY | D. LOSS OF USE<br>ACTUAL LOSSES SUSTAINED | E. PERSONAL LIABILITY | F. MEDICAL PAY EACH PERSON |
|---|---|---|---|---|---|
| 91,200 | 9,120 | 63,840 | IN 12 MOS. | 100,000 | 1,000 |

FOR LOSSES ARISING UNDER SECTION I, WE WILL PAY ONLY THAT PART OF THE LOSS IN EXCESS OF   $500.

| COVERAGE | | DESCRIPTION | PREMIUM | COVERAGES | | DESCRIPTION | PREMIUM |
|---|---|---|---|---|---|---|---|
| BASIC COVERAGE | | | | | | | |
| HO3 | 01/00 | Special Form | 1,644.00 | 12550 | 01/80 | Other Structures | |
| IN0000 | 01/05 | Privacy Stmt | | 12670 | 11/97 | Sinkhole Collaps | |
| HO300TN | 07/05 | Spec Provisions | | IN0859 | 02/06 | Important Info | |
| IN2291 | 03/03 | Important Notice | | IN2381 | 12/04 | Important Notice | |
| IN2426 | 07/05 | Important Notice | | IN2343 | 03/04 | Important Notice | |
| 12567P | 05/03 | Replacement Cost | 26.00 | 12559 | 09/99 | Per Prop Repl | |
| HO216 | 01/00 | Prem Alarm Prot | 33.00CR | 12747 | 12/01 | Fungi/Bacteria | |
| | | | | | | **TOTAL PREMIUM** | 1,637.00 |

| Additional Residence Occupied By Insured | 01% NEW HOME CREDIT |

## Mortgage Loss Payee or Other Interest

| Loan Number | 0019520253 |

**UNITED STATES OF AMERICA**          1ST
**ATTRHS OISA**                        MORT
**PO BOX 66876**
**ST LOUIS, MO**          63166-6876

**AMCO INSURANCE COMPANY**
Authorized Representative
R   927065748  71

DIRECT BILL    LFYZ 07227                    INSURED COPY                                                    75

## AMCO INSURANCE COMPANY

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary and countersigned as may be required on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

## ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary and countersigned as may be required on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

## DEPOSITORS INSURANCE COMPANY

IN WITNESS WHEREOF, the Company has caused this policy to be signed by its president and secretary and countersigned as may be required on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

12501A (10-98)

HA 00100372451          08/15/07          INSURED COPY

Page 1 of 1

71 00076

**YOUR HOMEOWNERS POLICY**
**QUICK REFERENCE**

**DECLARATIONS PAGE**
Your Name
Location of Your Residence
Policy Period
Coverages
Amounts of Insurance
Amount of Deductible

| | | Beginning on the pages noted below for policy forms HO 00 | | | | |
|---|---|---|---|---|---|---|
| | | 02 | 03 | 04 | 05 | 06 |
| | **AGREEMENT** | 1 | 1 | 1 | 1 | 1 |
| | **DEFINITIONS** | 1 | 1 | 1 | 1 | 1 |
| | **DEDUCTIBLE** | 3 | 3 | 3 | 3 | 2 |
| **SECTION I YOUR PROPERTY** | **COVERAGES** <br> Property Coverages <br> Loss of Use <br> Additional Coverages <br> Debris Removal <br> Trees, Shrubs and Plants <br> Credit Card <br> Glass or Safety Glazing Material | 3 | 3 | 3 | 3 | 3 |
| | **PERILS INSURED AGAINST** | 10 | 10 | 10 | 12 | 10 |
| | **EXCLUSIONS** | 12 | 14 | 11 | 14 | 12 |
| | **CONDITIONS** <br> Insurable Interest <br> Duties After Loss <br> Loss Settlement <br> Mortgage Clause | 13 | 15 | 13 | 15 | 13 |
| **SECTION II YOUR LIABILITY** | **COVERAGES** <br> Personal Liability <br> Medical Payments to Others | 16 | 19 | 15 | 19 | 16 |
| | **EXCLUSIONS** | 17 | 19 | 15 | 19 | 16 |
| | **ADDITIONAL COVERAGES** <br> Claims Expenses <br> First Aid Expenses <br> Damage to Property of Others <br> Loss Assessment | 22 | 24 | 19 | 24 | 20 |
| | **CONDITIONS** <br> Limit of Liability <br> Duties After Loss <br> Policy Period | 23 | 25 | 20 | 25 | 21 |
| **SECTION I SECTION II** | **CONDITIONS** <br> Cancellation <br> Non-Renewal | 24 | 26 | 22 | 26 | 23 |

# HOMEOWNERS 3
# SPECIAL FORM

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

A. In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance.

B. In addition, certain words and phrases are defined as follows:

1. "Aircraft Liability", "Hovercraft Liability", "Motor Vehicle Liability" and "Watercraft Liability", subject to the provisions in b. below, mean the following:

   a. Liability for "bodily injury" or "property damage" arising out of the;

      1) Ownership of such vehicle or craft by an "insured";

      2) Maintenance, occupancy, operation, use, loading or unloading of such vehicle or craft by any person;

      3) Entrustment of such vehicle or craft by an "insured" to any person;

      4) Failure to supervise or negligent supervision of any person involving such vehicle or craft by an "insured"; and

      5) Vicarious liability, whether or not imposed by law, for the actions of a child or minor involving such vehicle or craft.

   b. For the purpose of this definition:

      1) Aircraft means any contrivance used or designed for flight except model or hobby aircraft not used or designed to carry people or cargo;

      2) Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles; and

      3) Watercraft means a craft principally designed to be propelled on or in water by wind, engine power or electric motor.

      4) Motor vehicle means a "motor vehicle" as defined in 7. below.

2. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

3. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following;

      1) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      2) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      3) The rendering of home day care services to a relative of an "insured".

4. "Employee" means an employee of an "insured", or an employee leased to an "insured" by a labor leasing firm under an agreement between an "insured" and the labor leasing firm, whose duties are other than those performed by a "residence employee".

5. "Insured" means:

a. You and residents of your household who are:

   1) Your relatives; or

   2) Other persons under the age of 21 and in the care of any person named above;

b. A student enrolled in school full-time, as defined by the school, who was a resident of your household before moving out to attend school, provided the student is under the age of:

   1) 24 and your relative; or

   2) 21 and in your care or the care of a person described in a.1) above; or

c. Under Section II, "insured" also means:

   1) With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 5.a. or 5.b. above. "Insured" does not mean a person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner; or

   2) With respect to a "motor vehicle" to which this policy applies:

     a) Persons while engaged in your employ or that of any person included in 5.a. or 5.b. above; or

     b) Other persons using the vehicle on an "insured location" with your consent.

Under both Section I and II, when the word an immediately precedes the word "insured", the words an "insured" together mean one or more "insureds".

6. "Insured location" means:

a. The "residence premises";

b. The part of other premises, other structures and grounds used by you as a residence; and

1) Which is shown in the Declarations; or

2) Which is acquired by you during the policy period for your use as a residence;

c. Any premises used by you in connection with a premises described in 6.a. and 6.b. above;

d. Any part of a premises:

   1) Not owned by an "insured"; and

   2) Where an "insured" is temporarily residing;

e. Vacant land, other than farm land, owned by or rented to an "insured";

f. Land owned by or rented to an "insured" on which a one, two, three or four family dwelling is being built as a residence for an "insured";

g. Individual or family cemetery plots or burial vaults of an "insured"; or

h. Any part of a premises occasionally rented to an "insured" for other than "business" use.

7. "Motor Vehicle" means:

a. A self-propelled land or amphibious vehicle; or

b. Any trailer or semi-trailer which is being carried on, towed by or hitched for towing by a vehicle described in a. above.

8. Under Section II "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

a. "Bodily injury"; or

b. "Property damage".

9. Under Section II, "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

10. "Residence employee" means:

a. An employee of an "insured", or an employee leased to an "insured" by a

labor leasing firm. under an agreement between an "insured" and the labor leasing firm, whose duties are related to the maintenance or use of the "residence premises". including household or domestic services; or

b. One who performs similar duties elsewhere not related to the "business" of an "insured".

A "residence employee" does not include a temporary employee who is furnished to an "insured" to substitute for a permanent "residence employee" on leave or to meet seasonal or short-term workload conditions.

11. "Residence premises" means:

a. The one family dwelling where you reside;

b. The two, three or four family dwelling where you reside in at least one of the family units; or

c. That part of any other building where you reside;

and which is shown as the "residence premises" in the Declarations.

"Residence premises" also includes other structures and grounds at that location.

See condition H under **SECTIONS I AND II - CONDITIONS.**

12. "Professional Services" means:

"Bodily injury", "property damage", or added by endorsement, "personal injury" due to rendering or failure to render any professional service. This includes but is not limited to:

a. Legal, accounting or advertising services:

b. Preparing. approving, or failing to prepare or approve maps, drawings, options, reports, surveys, change orders, designs or specifications:

c. Supervisory, inspection, engineering, or architectural services;

d. Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;

e. Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, personal grooming or tattooing;

f. Optometry or optical or hearing aid services, including but not limited to the prescribing, prepairing, fitting, demonstrating or distributing of ophthalmic lenses and similar products or hearing aid services;

g. Body piercing services;

h. Pharmacological services; and

i. Any other health or therapeutic service, treatment, advice or instruction.

13. "Actual Cash Value" means:

The cost to repair or replace **Covered Property**, at the time of loss or damage, whether that property has sustained partial or total loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence.

## DEDUCTIBLE

Unless otherwise noted in this policy, the following deductible provision applies:

Subject to the policy limits that apply, we will pay only that part of the total of all loss payable under **SECTION I - PROPERTY COVERAGES** that exceeds the deductible amount shown in the Declarations.

## SECTION I - PROPERTY COVERAGES

A. **COVERAGE A - Dwelling**

1. We cover:

a. The dwelling on the "residence premises" shown in the Declarations, in-

cluding structures attached to the dwelling; and

b. Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 29 of 72   PageID #: 29

**2.** This coverage does not apply to land, including land on which the dwelling is located.

**B. COVERAGE B - Other Structures**

**1.** We cover other structures on the "residence premises" set apart from the dwelling by clear space. This includes structures connected to the dwelling by only a fence, utility line, or similar connection.

This coverage does not apply to land, including land on which the other structures are located.

**2.** We do not cover other structures:

    **a.** Used in whole or in part for "business"; or

    **b.** Rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage.

**3.** The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage **A.** Use of this coverage does not reduce the Coverage **A** limit of liability.

**C. COVERAGE C - Personal Property**

**1. Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. Before a loss and at your request, we will cover personal property owned by:

    **a.** Others while the property is on the part of the "residence premises" occupied by an "insured"; or

    **b.** A guest or a "residence employee", while the property is in any residence occupied by an "insured".

**2. Limit For Property At Other Residences**

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C,** or $1000, whichever is greater. However, this limitation does not apply to personal property:

    **a.** Moved from the "residence premises" because it is being repaired, renovated

or rebuilt and is not fit to live in or store property in; or

    **b.** In a newly acquired principal residence for 30 days from the time you begin to move the property there.

**3. Special Limits of Liability**

These special limits do not increase the Coverage **C** limit of liability. The special limit for each category below is the total limit for each loss for all property in that category.

    **a.** $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

    **b.** $1500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

    This limit includes the cost to research, replace or restore the information from the lost or damaged material.

    **c.** $1500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

    **d.** $1500 on trailers or semi-trailers not used with watercraft of all types.

    **e.** $1500 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

    **f.** $2500 for loss by theft of firearms and related equipment.

    **g.** $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

    **h.** $2500 on property, on the "residence premises", used mainly for "business" purposes.

HA 00100372451              **INSURED COPY**

71   00081

i. $500 on property, away from the "residence premises", used mainly for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property as described in categories **j.** and **k.** below.

j. $1500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include:

   1) antennas;

   2) tapes, wires, records, discs or other media;

   that can be used with any apparatus described in this category **j.**

k. $1500 on electronic apparatus and accessories used mainly for "business", while away from the "residence premises" and not in or upon a "motor vehicle". The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources. Accessories include:

   1) antennas;

   2) tapes, wires, records, discs or other media;

   that can be used with any apparatus described in this category **k.**

4. **Property Not Covered**

   We do not cover:

   a. Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

   b. Animals, birds or fish;

   c. "Motor vehicles"

      1) This includes:

         a) Their accessories, equipment and parts; or

      b) Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor vehicles". Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above but only while such property is in or upon the "motor vehicle".

      2) We do cover "motor vehicles" not required to be registered for use on public roads or property which are:

         a) Used solely to service an "insured's" residence; or

         b) Designed to assist the handicapped;

   d. Aircraft meaning any contrivance used or designed for flight including any parts whether or not attached to the aircraft, except model or hobby aircraft not used or designed to carry people or cargo;

   e. Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles;

   f. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

   g. Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E. 10.** Landlord's Furnishings under **SECTION I - PROPERTY COVERAGES;**

   h. Property rented or held for rental to others off the "residence premises";

   i. "Business" data, including such data stored in:

      1) Books of account, drawings or other paper records; or

      2) Computers and related equipment.

HA 00100372451          INSURED COPY

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 31 of 72   PageID #: 31

We do cover the cost of blank recording or storage media. and of pre-recorded computer programs available on the retail market;

j.  Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E. 6.** Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money under **SECTION I - PROPERTY COVERAGE**; or

k.  Water or steam.

## D. COVERAGE D - Loss Of Use

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense. **2.** Fair Rental Value. and **3.** Civil Authority Prohibits Use below.

### 1. Additional Living Expense

If a loss covered under Section I makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

### 2. Fair Rental Value

If a loss covered under Section I makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

### 3. Civil Authority

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1.** Additional Living Expense and **2.** Fair

Rental Value above for <u>no more than two weeks.</u>

### 4. Loss or Expense Not Covered

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense and **2.** Fair Rental Value above are not limited by expiration of this policy. **The maximum period for payment shall not exceed 12 consecutive months.**

## E. ADDITIONAL COVERAGES

### 1. Debris Removal

a.  We will pay your reasonable expense for the removal of:

   1)  Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   2)  Ash. dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

b.  We will also pay your reasonable expense, up to $1000. for the removal from the "residence premises" of:

   1)  Your tree(s) felled by the peril of Windstorm or Hail or Weight of Ice, Snow or Sleet; or

   2)  A neighbor's tree(s) felled by a Peril Insured Against under Coverage **C**;

   provided the tree(s):

   3)  Damage(s) a covered structure;

   4)  Does not damage a covered structure, but:

      a)  Block(s) a driveway on the "residence premises" which

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 32 of 72   PageID #: 32

prevents a "motor vehicle". that is registered for use on public roads or property. from entering or leaving the "residence premises"; or

b) Block(s) a ramp or other fixture designed to assist a handicapped person to enter or leave the dwelling building.

The $1000 limit is the most we will pay in any one loss regardless of the number of fallen trees. No more than $500 of this limit will be paid for the removal of any one tree.

This coverage is additional insurance.

2. **Reasonable Repairs**

a. We will pay the reasonable cost incurred by you for necessary measures taken solely to protect covered property that is damaged by a Peril Insured Against from further damage.

b. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against. This coverage does not:

1) Increase the limit of liability that applies to the covered property; or

2) Relieve you of your duties, in case of a loss to covered property, described in **B.4.** under **SECTION I - CONDITIONS.**

3. **Trees, Shrubs and Other Plants**

We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against:

a. Fire or Lightning;

b. Explosion;

c. Riot or Civil Commotion;

d. Aircraft;

e. Vehicles not owned or operated by a resident of the "residence premises";

f. Vandalism or Malicious Mischief; or

g. Theft.

We will pay up to 5% of the limit of liability that applies to the dwelling for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

This coverage is additional insurance.

4. **Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

This coverage is additional insurance. No deductible applies to this coverage.

5. **Property Removed**

We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed.

This coverage does not change the limit of liability that applies to the property being removed.

6. **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money**

a. We will pay up to $1000 for:

1) The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

2) Loss resulting from theft or unauthorized use of an electronic fund transfer card or access device used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

3) Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 33 of 72   PageID #: 33

**4)** Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

This coverage is additional insurance. No deductible applies to this coverage.

**b.** We do not cover:

**1)** Use of a credit card, electronic fund transfer card or access device:

**a)** By a resident of your household;

**b)** By a person who has been entrusted with either type of card or access device; or

**c)** If an "insured" has not complied with all terms and conditions under which the cards are issued or the devices accessed.

**2)** Loss arising out of "business" use or dishonesty of an "insured".

**c.** If the coverage in **6.a.** above applies, the following defense provisions also apply:

**1)** We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**2)** If a suit is brought against an "insured" for liability under **a.1)** or **2)** above, we will provide a defense at our expense by counsel of our choice.

**3)** We have the option to defend at our expense an "insured" or an "insured's" bank against any suit for the enforcement of payment under **a.3)** above.

**7. Loss Assessment**

**a.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you as owner or tenant of the "residence premises" by a corporation or association of property owners. The assessment must be made as a result of direct loss to the property, owned by all members collectively, of the type that could be covered by this policy if owned by you, caused by a Peril Insured Against under Coverage **A**, other than

**1)** Earthquake; or

**2)** Land shock waves or tremors before, during or after a volcanic eruption.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments. We will only apply one deductible, per building or structure, to the total amount of any one loss to the property described above, regardless of the number of assessments.

**b.** We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

This coverage is additional insurance.

**8. Collapse**

**a.** With respect to this Additional coverage:

**1)** Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its current intended purpose.

**2)** A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**3)** A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**4)** A building or any part of a building that is standing is not considered to be in a state of collapse even if

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 34 of 72   PageID #: 34

it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

b. We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

   1) Perils Insured Against under Coverage **C**. These perils apply to covered buildings and personal property for loss insured by this collapse coverage;

   2) Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

   3) Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

   4) Weight of contents, equipment, animals or people;

   5) Weight of rain which collects on a roof; or

   6) Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

c. Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **b.2)** through **6)** above, unless the loss is a direct result of the collapse of a building or any part of a building.

d. This coverage does not increase the limit of liability applying to the damaged covered property.

9. **Glass or Safety Glazing Material**

   a. We cover:

   1) The breakage of glass or safety glazing material which is part of a covered building, storm door or storm window.

   2) The direct physical loss to covered property caused solely by the pieces, fragments or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

   b. This coverage does not include loss:

   1) To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.2)** above, or

   2) On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

   c. This coverage does not increase the limit of liability that applies to the damaged property.

10. **Landlord's Furnishings**

    We will pay up to $2500 for your appliances, carpeting and other household furnishings, in each apartment on the "residence premises" regularly rented or held for rental to others by an "insured", for loss caused by a Peril Insured Against in **C**, other than Theft.

    This limit is the most we will pay in any one loss regardless of the number of appliances, carpeting, or other household furnishings involved in the loss.

    This coverage does not increase the limit of liability applying to the damaged property.

11. **Ordinance or Law**

    a. You may use up to 10% of the limit of liability that applies to Coverage A for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

    1) The construction, demolition, remodeling, renovation or repair of that part of a covered building or

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 35 of 72   PageID #: 35

other structure damaged by a Peril Insured Against;

2) The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

3) The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

b. You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in a. above.

c. We do not cover:

1) The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

2) The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants" in or on any covered building or other structure.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Chemicals include, but are not limited to, petroleum, petroleum derivatives, petroleum synthetics and farm chemicals. Waste includes materials to be recycled, reconditioned or reclaimed.

This exception applies even if the irritant or contaminant has a function with respect to your property or "business".

This coverage is additional insurance.

**12. Grave Markers**

We will pay up to $5000 for grave markers, including mausoleums, on or away from the "residence premises" for loss caused by a Peril Insured Against under Coverage **C.**

This coverage does not increase the limits of liability that apply to the damaged covered property.

---

**SECTION I - PERILS INSURED AGAINST**
**THIS SECTION ALSO CONTAINS EXCEPTIONS TO OR EXCLUSIONS FROM COVERAGE**

**A. COVERAGE A - Dwelling And COVERAGE B - Other Structures**

1. We insure against risk of direct physical loss to property described in Coverages A and B,.

2. We do not insure, however, for loss:

a. Excluded under **SECTION I - EXCLUSIONS;**

b. Involving collapse, other than as provided in **E.8.** under **SECTION I - PROPERTY COVERAGES;** and

c. Caused by:

1) Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion does not apply if you have used reasonable care to:

a) Maintain heat in the building; or

b) Shut off the water supply and drain all systems and appliances of water;

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 36 of 72   PageID #: 36

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

2) Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

a) Fence, pavement, patio or swimming pool;

b) Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure; or

c) Retaining wall or bulkhead that does not support all or part of a building or other structure; or

d) Pier, wharf or dock;

3) Theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied;

4) Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

5) Constant or repeated seepage or leakage of water or steam over a period of weeks, months or years from within:

a) A plumbing, heating, air conditioning or automatic fire

protective sprinkler system or a household appliance on the "residence premises"; or

b) A storm drain or water, steam or sewer pipes off the "residence premises".

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment; or

6) Any of the following:

a) Wear and tear, marring, deterioration;

b) Mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

c) Smog, rust or other corrosion, fungi, fungus, mold, wet or dry rot;

d) Smoke from agricultural smudging or industrial operations;

e) Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against under Coverage C of this policy.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Chemicals include, but are not limited to, petroleum, petroleum derivatives, petroleum synthetics and farm chemicals. Waste includes materials to be recycled, reconditioned or reclaimed;

In this provision, any reference to "pollutant" applies whether or not the irritant or

contaminant has any function with respect to your property or "business".

f) Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

g) Birds, vermin, rodents, insects or animals; or

h) Tree, shrub, or bush roots.

**Exception to c.6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**SECTION I - EXCLUSION A.3.** Water Damage, paragraphs **a.** and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **Exception to c.6)** above.

Under **A.2.b.** and **c.** above, any ensuing loss to property described in Coverages **A**

and **B** not precluded by any other provision in this policy is covered.

**B. COVERAGE C - Personal Property**

We insure for direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded in **SECTION I - EXCLUSIONS**

**1. Fire Or Lightning**

**2. Windstorm Or Hail**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

**3. Explosion**

**4. Riot Or Civil Commotion**

**5. Aircraft**

This peril includes self-propelled missiles and spacecraft.

**6. Vehicles**

**7. Smoke**

This peril means sudden and accidental damage from smoke, including the emission or puffback of smoke, soot, fumes or vapors from a boiler, furnace or related equipment.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism Or Malicious Mischief**

**9. Theft**

a. This peril includes attempted theft and loss of property from a known place when it is likely that the property has been stolen.

b. This peril does not include loss caused by theft:

1) Committed by an "insured";

HA 00100372451          INSURED COPY          71  00089

2) In or to a dwelling under con-
struction. or of materials and sup-
plies for use in the construction
until the dwelling is finished and
occupied;

3) From that part of a "residence
premises" rented by an "insured"
to other than an "insured"; or

4) That occurs off the "residence
premises" of:

a) Trailers, semi-trailers and
campers;

b) Watercraft of all types, and
their furnishings, equipment
and outboard engines or mo-
tors; or

c) Property while at any other
residence owned by, rented
to, or occupied by an "in-
sured", except while an "in-
sured" is temporarily living
there. Property of an "in-
sured" who is a student is
covered while at the resi-
dence the student occupies to
attend school as long as the
student has been there at any
time during the 60 days im-
mediately before the loss.

## 10. Falling Objects

This peril does not include loss to property
contained in a building unless the roof or
an outside wall of the building is first dam-
aged by a falling object. Damage to the
falling object itself is not included.

## 11. Weight Of Ice, Snow Or Sleet

This peril means weight of ice, snow or
sleet which causes damage to property
contained in a building.

## 12. Accidental Discharge Or Overflow Of Water Or Steam

a. This peril means accidental discharge
or overflow of water or steam from
within a plumbing, heating, air condi-
tioning or automatic fire protective
sprinkler system or from within a
household appliance.

b. This peril does not include loss:

1) To the system or appliance from
which the water or steam es-
caped;

2) Caused by or resulting from freez-
ing except as provided in Peril In-
sured Against 14. Freezing;

3) On the "residence premises"
caused by accidental discharge or
overflow which occurs off the
"residence premises"; or

4) Caused by mold, fungus or wet rot.

c. In this peril, a plumbing system or
household appliance does not include
a sump, sump pump or related equip-
ment or a roof drain, gutter, downspout
or similar fixtures or equipment.

d. SECTION I - EXCLUSION A.3. Water
Damage, paragraphs a. and c. that
apply to surface water and water below
the surface of the ground do not apply
to loss by water covered under this
peril 12.

## 13. Sudden And Accidental Tearing Apart, Cracking, Burning or Bulging

This peril means sudden and accidental
tearing apart, cracking, burning or bulging
of a steam or hot water heating system, an
air conditioning or automatic fire protective
sprinkler system, or an appliance for heat-
ing water.

We do not cover loss caused by or resulting
from freezing under this peril.

## 14. Freezing

a. This peril means freezing of a plumb-
ing, heating, air conditioning or auto-
matic fire protective sprinkler system
or of a household appliance but only if
you have used reasonable care to:

1) Maintain heat in the building; or

2) Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

b. In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equip-

ment or a roof drain, gutter, downspout or similar fixtures or equipment.

15. **Sudden And Accidental Damage From Artificially Generated Electrical Current**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

16. **Volcanic Eruption**

This peril does not include loss caused by earthquake, land shock waves or tremors.

---

## SECTION I - EXCLUSIONS

A. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

1. **Ordinance Or Law**

Ordinance or Law means any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation or repair of property, including removal of any resulting debris. This Exclusion **A.1.a.** does not apply to the amount of coverage that may be provided for in **E.11. Ordinance Or Law** under **SECTION I - PROPERTY COVERAGES**;

b. The requirements of which result in a loss in value to property; or

c. Requiring any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Chemicals include, but are not limited to, petroleum, petroleum derivatives, petroleum synthetics and farm chemicals. Waste includes materials

to be recycled, reconditioned or reclaimed.

This Exclusion **1.** applies whether or not the property has been physically damaged, or even if the irritant or contaminant has a function with respect to your property or "business".

2. **Earth Movement**

Earth Movement means:

a. Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

b. Landslide, mudslide, or mudflow;

c. Subsidence or sinkhole; or

d. Any other earth movement including earth sinking, rising or shifting;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the damage caused by the ensuing cause of loss.

This Exclusion **2.** does not apply to loss by theft.

3. **Water Damage**

Water Damage means:

a. Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 40 of 72   PageID #: 40

b. Water or water-borne material which backs up through sewers or drains or which overflows or is discharged from a sump, sump pump or related equipment; or

c. Water or water-borne material below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

Direct loss by fire, explosion or theft resulting from water damage is covered.

4. **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure of power or other utility service results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss or damage caused by that peril.

5. **Neglect**

Neglect means neglect of an "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

6. **War**

War includes the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

7. **Nuclear Hazard**

This Exclusion 7. pertains to Nuclear Hazard to the extent set forth in **M. Nuclear Hazard Clause** under **SECTION I - CONDITIONS.**

8. **Intentional Loss**

Intentional Loss means any loss arising out of any act an "insured" commits or conspires to commit with the intent to cause a loss.

In the event of such loss, no "insured" is entitled to coverage, even "insureds" who did not commit or conspire to commit the act causing the loss.

B. We do not insure for loss to property described in Coverages A and B caused by any of the following. However, any ensuing loss to property described in Coverages A and B not precluded in **SECTION I - EXCLUSIONS** in A. above is covered.

1. Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in A. above to produce the loss.

2. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body;

3. Faulty, inadequate or defective:

a. Planning, zoning, development, surveying, siting;

b. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

c. Materials used in repair, construction, renovation or remodeling; or

d. Maintenance;

of part or all of any property whether on or off the "residence premises".

## SECTION I - CONDITIONS

A. **Insurable Interest and Limit of Liability**

Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

1. To an "insured" for more than the amount of such "insured's" interest at the time of loss; or

2. For more than the applicable limit of liability.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 41 of 72   PageID #: 41

**B. Duties After Loss**

In case of a loss to covered property, these duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

1. Give prompt notice to us or our agent;

2. Notify the police in case of loss by theft;

3. Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6. Credit Card, Electronic Fund Transfer Card or Access Device, Forgery And Counterfeit Money** under **SECTION I - PROPERTY COVERAGES;**

4. Protect the property from further damage. If repairs to the property are required, you must:

   a. Make reasonable and necessary repairs to protect the property; and

   b. Keep an accurate record of repair expenses;

5. Cooperate with us in the investigation of a claim;

6. Prepare an inventory of damaged personal property showing the quantity, description, "actual cash value" and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

7. As often as we reasonable require:

   a. Show the damaged property;

   b. Provide us with records and documents we request and permit us to make copies; and

   c. Submit to examination under oath, while not in the presence of any other "insured", and sign the same;

8. Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   a. The time and cause of loss;

   b. The interests of the "insureds" and all others in the property involved and all liens on the property;

   c. Other insurance which may cover the loss;

   d. Changes in title or occupancy of the property during the term of the policy;

   e. Specifications of damaged buildings and detailed repair estimates;

   f. The inventory of damaged personal property described in **6.** above;

   g. Receipts for additional living expenses incurred and records that support the fair rental value loss; and

   h. Evidence or affidavit that supports a claim under **E.6. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery and Counterfeit Money** under **SECTION I - PROPERTY COVERAGES,** stating the amount and cause of loss.

**C. Loss Settlement**

Covered property losses are settled as follows:

1. Property of the following types:

   a. Personal property;

   b. Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings; and

   c. Structures that are not buildings; and

   d. Grave markers, including mausoleums;

   at "actual cash value" at the time of loss but not more than the amount required to repair or replace.

2. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:

   a. We will pay the cost to repair or replace, after application of deductible and without deduction for depreciation, but not more than the least of the following amounts:

      1) The limit of liability under this policy that applies to the building;

      2) The replacement cost of that part of the building damaged for like

HA 00100372451                    INSURED COPY                    71  00093

construction and use on the same premises: or

3) The necessary amount actually spent to repair or replace the damaged building.

b. We will pay no more than the "actual cash value" of the damage until actual repair or replacement is complete. unless the cost to repair or replace the damage is both:

1) Less than 5% of the amount of insurance in this policy on the building; and

2) Less than $1.000

c. You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an "actual cash value" basis. You may then make claim within 180 days after loss for any additional liability according to the provisions of this Condition **C.** Loss Settlement if the repair or replacement has been completed.

**D. Loss to a Pair or Set**

In case of loss to a pair or set we may elect to:

1. Repair or replace any part to restore the pair or set to its value before the loss; or

2. Pay the difference between "actual cash value" of the property before and after the loss.

**E. Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will.

1. Pay its own appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

**F. Other Insurance and Service Agreement**

If a loss covered by this policy is also covered by:

1. Other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss: or

2. A service agreement, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

**G. Suit Against Us**

No action can be brought unless there has been full compliance with all of the terms under Section I of this policy and the action is started within one year after the date of loss.

**H. Our Option**

If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with material or property of like kind and quality.

**I. Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

1. Reach an agreement with you;

2. There is an entry of a final judgment; or

3. There is a filing of an appraisal award with us.

If we have paid a loss for damage to your real or personal property, we will take appropriate deduction from any payment due for any subsequent loss for damage to the same covered real or personal property, unless you furnish us

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 43 of 72   PageID #: 43

with proof that the prior damage has been repaired.

J. **Abandonment of Property**

We need not accept any property abandoned by an "insured".

K. **Mortgage Clause**

The word "mortgagee" includes trustee.

1. If a mortgagee is named in this policy, any loss payable under Coverage **A** or **B** will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages.

2. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

   a. Notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

   b. Pays any premium due under this policy on demand if you have neglected to pay the premium; and

   c. Submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. **E.** Appraisal, **G.** Suit Against Us and **I.** Loss Payment under **SECTION I - CONDITIONS** also apply to the mortgagee.

3. If we decide to cancel or not to renew this policy, the mortgagee will be notified at least 10 days before the date cancellation or nonrenewal takes effect.

4. If we pay the mortgagee for any loss and deny payment to you:

   a. We are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

   b. At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

5. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

L. **No Benefit to Bailee**

We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

M. **Nuclear Hazard Clause**

1. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

2. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

3. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

N. **Recovered Property**

If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

O. **Volcanic Eruption Period**

One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

P. **Policy Period**

This policy applies only to loss which occurs during the policy period.

Q. **Concealment Or Fraud**

We provide coverage to no "insureds" under this policy if, whether before or after a loss, an "insured" has:

HA 00100372451                    INSURED COPY                    71  00005

1. Intentionally concealed or misrepresented any material fact or circumstance:

2. Engaged in fraudulent conduct; or

3. Made false statements:

relating to this insurance.

**R. Inflation Protection**

The company may increase the limits of liability for Coverages **A, B** and **C** at the beginning of each policy period, based upon reports of recognized appraisal agencies, reflecting changes in cost of construction. Payment of the continuation premium will constitute the insured's acceptance of the revised limit of liability as shown on the Homeowners Continuation Declarations.

## SECTION II - LIABILITY COVERAGES

**A. COVERAGE E - Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1. Pay up to our limit of liability for the damages for which an "insured" is legally liable. Damages include prejudgment interest awarded against an "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" has been exhausted by payment of a judgment or settlement.

**B. COVERAGE F - Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses

means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

   a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

   b. Is caused by the activities of an "insured";

   c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

   d. Is caused by an animal owned by or in the care of an "insured".

## SECTION II - EXCLUSIONS

**A. "Motor Vehicle Liability"**

1. Coverages **E** and **F** do not apply to any "motor vehicle liability" if, at the time and place of an "occurrence":

   a. A law, or regulation issued by a government agency, requires the involved "motor vehicle" to have been registered for it to be used on public roads or property; or

   b. The involved "motor vehicle" is being:

      1) Operated in, or practicing for, any prearranged or organized race,

      speed contest or other competition;

      2) Rented to others;

      3) Used to carry persons or cargo for a charge; or

      4) Used for any "business" purpose except for a motorized golf cart while on a golfing facility.

2. If Exclusion **A.1.** does not apply, there is still no coverage for "motor vehicle liability" unless the "motor vehicle" is:

   a. In dead storage on an "insured location";

HA 00100372451

INSURED COPY

71 00096

is owned by an "insured" who acquired it before the policy period, but only if:

i) You declare them at policy inception; or

ii) Your intent to insure them is reported to us in writing within 45 days after you acquire them.

The coverages in c) and d) above apply for the policy period.

Horsepower means the maximum power rating assigned to the engine or motor by the manufacturer

C. "Aircraft Liability"

This policy does not cover "aircraft liability".

D. "Hovercraft Liability"

This policy does not cover "hovercraft liability".

E. COVERAGE E - Personal Liability and COVERAGE F - Medical Payments to Others

Coverages E and F do not apply to the following:

1. Expected or Intended Injury

"Bodily Injury" or "property damage" which is expected or intended by an "insured" even if the resulting "bodily injury" or "property damage":

a. Is of a different kind, quality or degree than initially expected or intended; or

b. Is sustained by a different person, entity, real or personal property, than initially expected or intended.

2. "Business"

a. "Bodily injury" or "property damage" arising out of or in connection with a "business" conducted from an "insured location" or engaged in by an "insured", whether or not the "business" is owned or operated by an "insured" or employs an "insured".

This Exclusion E.2. applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be pro-

vided because of the nature of the "business".

b. This Exclusion E.2. does not apply to:

1) The rental or holding for rental of an "insured location":

a) On an occasional basis if used only as a residence;

b) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

c) In part, as an office, school, studio or private garage; and

2) An "insured" under the age of 21 years involved in a part-time or occasional, self-employed "business" with no employees;

3. Professional Services

"Bodily injury" or "property damage" arising out of the rendering of or failure to render "professional services";

4. "Insured's" Premises Not An "Insured Location"

"Bodily injury" or "property damage" arising out of a premise:

a. Owned by an "insured";

b. Rented to an "insured"; or

c. Rented to others by an "insured";

that is not an "insured location";

5. War

"Bodily injury" or "property damage" caused directly or indirectly by war, including the following and any consequence of any of the following:

a. Undeclared war, civil war, insurrection, rebellion or revolution;

b. Warlike act by a military force or military personnel; or

c. Destruction, seizure or use for a military purpose.

HA 00100372451          INSURED COPY          71   00098

Discharge of a nuclear weapon will be deemed a warlike act even if accidental:

### 6. Communicable Disease

"Bodily injury" or "property damage" which arises out of the transmission of a communicable disease by an "insured";

### 7. Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse

"Bodily injury" or "property damage" arising out of any:

a. sexual activity or conduct,

b. corporal punishment, or

c. physical or mental abuse.

This exclusion applies whether or not any acts were intentional or unintentional and whether or not the acts were in violation of any criminal or penal code or statute.

### 8. Controlled Substance

"Bodily injury" or "property damage" arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

### 9. Pollution

a. "Bodily injury", "property damage", or where added by endorsement, "personal injury" which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to "bodily injury" sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building.

b. Any loss, cost or expense arising out of any:

1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

"Pollutants" means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Chemicals include, but are not limited to, petroleum, petroleum derivatives, petroleum synthetics and farm chemicals. Waste includes material to be recycled, reconditioned or reclaimed.

This exclusion does not apply to "bodily injury", "property damage", or where added by endorsement, "personal injury" arising out of heat, smoke or fumes from a hostile fire on your premises.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

We will not have a duty to defend any "insured" against a claim or suit seeking damages to which this insurance does not apply.

### 10. Environmental Exposures

"Bodily injury", "property damage", or where added by endorsement, "personal injury" arising out of:

a. Asbestos or any asbestos-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving asbestos, its use, exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of asbestos;

HA 00100372451 INSURED COPY 71 00098

Case 4:08-cv-00039-SKL Document 1 Filed 05/14/08 Page 47 of 72 PageID #: 47

b. Electromagnetic emissions or radiation-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving any electromagnetic emissions or radiation for use, exposure, existence, detection, removal, elimination or avoidance or electrical energy;

c. Lead or any lead-related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn, or other duty involving lead products, their use, exposure, existence, detection, removal, elimination or avoidance; or

d. Radon or any other radioactive emissions, manmade or natural, or any related injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, omission, failure to warn or other duty involving radon or any other radioactive emissions, their use, exposure, existence, detection, removal, elimination or avoidance.

F. **COVERAGE E - Personal Liability**

Coverage E does not apply to:

1. Liability:

   a. For any loss assessment charged against you as a member of an association, corporation or community of property owners; except as provided in **D. Loss Assessment** under **SECTION II - ADDITIONAL COVERAGES;**

   b. Under any contract or agreement entered into by an "insured". However, this exclusion does not apply to written contracts:

      1) That directly relate to the ownership, maintenance or use of an "insured location"; or

      2) Where the liability of others is assumed by you prior to an "occurrence";

unless excluded in **a.** above or elsewhere in this policy:

2. "Property damage" to property owned by an "insured". This includes costs or expenses incurred by an "insured" or others to repair, replace, enhance, restore or maintain such property to prevent injury to a person or damage to property of others, whether on or away from an "insured location";

3. "Property damage" to property rented to, occupied or used by or in the care of the "insured". This exclusion does not apply to "property damage" caused by fire, smoke or explosion;

4. "Bodily injury" to any person eligible to receive any benefits voluntarily provided or required to be provided by an "insured" under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

5. "Bodily injury" or "property damage" for which an "insured" under this policy:

   a. Is also an insured under a nuclear energy liability policy issued by the:

      1) Nuclear Energy Liability Insurance Association;

      2) Mutual Atomic Energy Liability Underwriters;

      3) Nuclear Insurance Association of Canada;

      or any of their successors; or

   b. Would be an insured under such a policy but for the exhaustion of its limit of liability; or

6. "Bodily injury" to you or an "insured" within the meaning of Definition 5. "Insured" paragraphs **a.** or **b.**

This exclusion also applies to any claim made or suit brought against you or an "insured":

   a. To repay; or

   b. Share damages with;

another person who may be obligated to pay damages because of "bodily injury" to an "insured".

### G. COVERAGE F - Medical Payments To Others

Coverage F does not apply to "bodily injury":

1. To a "residence employee" if the bodily injury":

   a. Occurs off the "insured location"; and

   b. Does not arise out of or in the course of the "residence employee's" employment by an "insured";

2. To any person eligible to receive benefits voluntarily provided or required to be provided under any:

   a. Workers' compensation law;

   b. Non-occupational disability law; or

   c. Occupational disease law;

3. From any:

   a. Nuclear reaction;

   b. Nuclear radiation; or

   c. Radioactive contamination;

   all whether controlled or uncontrolled or however caused; or

   d. Any consequence of any of these; or

4. To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

---

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limit of liability:

### A. Claim Expenses

We pay:

1. Expenses we incur and costs taxed against an "insured" in any suit we defend;

2. Premiums on bonds required in a suit we defend, but not for bond amounts more than the Coverage E limit of liability. We need not apply for or furnish any bond;

3. Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $250 per day, for assisting us in the investigation or defense of a claim or suit; and

4. Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

### B. First Aid Expenses

We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to an "insured".

### C. Damage to Property of Others

1. We will pay, at replacement cost, up to $1000 per "occurrence" for "property damage" to property of others caused by an "insured".

2. We will not pay for "property damage":

   a. To the extent of any amount recoverable under Section I;

   b. Caused intentionally by an "insured" who is 13 years of age or older;

   c. To property owned by an "insured";

   d. To property owned by or rented to a tenant of an "insured" or a resident in your household; or

   e. Arising out of:

      1) A "business" engaged in by an "insured";

      2) Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

      3) The ownership, maintenance, occupancy, use, loading or unloading of aircraft, watercraft or "motor vehicles".

         This exclusion e.3) does not apply to a "motor vehicle" that:

         a) Is designed for recreational use off public roads;

HA 00100372451                    INSURED COPY                    71  00101

b) Is not owned by an "insured". and

c) At the time and place of an "occurrence", is not required by law, or regulation issued by a government agency, to have been registered for it to be used on public roads or property.

1) Is elected by the members of a corporation or association of property owners: and

2) Serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

**D. Loss Assessment.**

1. We will pay up to $1000 for your share of loss assessment charged during the policy period against you, as owner or tenant of the "residence premises", during the policy period by a corporation or association of property owners, when the assessment is made as a result of:

   a. "Bodily injury" or "property damage" not excluded from coverage under **SECTION II - EXCLUSIONS;** or

   b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided such person:

2. Paragraph I. Policy Period under **SECTION II - CONDITIONS** does not apply to this Loss Assessment Coverage.

3. Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

   a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

   b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

4. We do not cover assessments charged against you or a corporation or association of property owners by any governmental body.

---

## SECTION II - CONDITIONS

**A. Limit of Liability**

Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the Coverage E limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage F limit of liability shown in the Declarations.

**B. Severability of Insurance**

This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

**C. Duties After Occurrence**

In case of an "occurrence," you or another "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

1. Give written notice to us or our agent as soon as is practical, which sets forth:

   a. The identity of the policy and "named insured" shown in the Declarations;

   b. Reasonably available information on the time, place and circumstances of "occurrence"; and

   c. Names and addresses of any claimants and witnesses:

2. Cooperate with us in the investigation, settlement or defense of any claim or suit;

3. Promptly forward to us every notice, demand, summons or other process relating to the "occurrence";

4. At our request, help us:

   a. To make settlement;

HA 00100372451                    INSURED COPY                    71  00102

**b.** To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

**c.** With the conduct of suits and attend hearings and trials; and

**d.** To secure and give evidence and obtain the attendance of witnesses;

**5.** With respect to **C.** Damage to Property of Others under **SECTION II - ADDITIONAL COVERAGES**, submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

**6.** No "insured" shall, except at such "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

**D. Duties Of An Injured Person - Coverage F - Medical Payments To Others**

**1.** The injured person or someone acting for the injured person will:

**a.** Give us written proof of claim, under oath if required. as soon as is practical; and

**b.** Authorize us to obtain copies of medical reports and records.

**2.** The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

**E. Payment Of Claim - Coverage F - Medical Payments To Others**

Payment under this coverage is not an admission of liability by an "insured" or us.

**F. Suit Against Us**

**1.** No action can be brought against us unless there has been full compliance with all of the terms under this Section II.

**2.** No one will have the right to join us as a party to any action against an "insured".

**3.** Also, no action with respect to Coverage E can be brought against us until the obligation of such "insured" has been determined by final judgment or agreement signed by us.

**G. Bankruptcy Of An Insured**

Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

**H. Other Insurance**

This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

**I. Policy Period**

This policy applies only to "bodily injury" or "property damage" which occurs during the policy period.

**J. Concealment Or Fraud**

We do not provide coverage to an "insured" who, whether before or after a loss, has:

**1.** Intentionally concealed or misrepresented any material fact or circumstance;

**2.** Engaged in fraudulent conduct; or

**3.** Made false statements;

relating to this insurance.

---

## SECTIONS I AND II - CONDITIONS

**A. Liberalization Clause**

If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

This Liberalization Clause does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

**1.** A subsequent edition of this policy; or

**2.** An amendatory endorsement.

HA 00100372451                    INSURED COPY                    71  00103

## B. Waiver Or Change Of Policy Provisions

A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

## C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice will be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

    a. When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

    b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

    c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

        1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

        2) If the risk has changed substantially since the policy was issued.

        This can be done by letting you know at least 30 days before the date cancellation takes effect.

    d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

3. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

## D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

## E. Assignment

Assignment of this policy will not be valid unless we give our written consent.

## F. Subrogation

An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply to Coverage **F** or Paragraph **C.** Damage To Property Of Others under **SECTION II - ADDITIONAL COVERAGES.**

## G. Death

If any person named in the Declarations or the spouse, if a resident of the same household, dies, the following apply:

1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death; and

2. "Insured" includes:

    a. An "insured" who is a member of your household at the time of your death, but only while a resident of the "residence premises"; and

    b. With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

HA 00100372451                    INSURED COPY

71   00104

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 52 of 72   PageID #: 52

**H. Dwelling**

We insure the dwelling described in the Declarations of this policy while occupied by the "insured", as the owner, principally for dwelling purposes and not otherwise.

Includes copyrighted material of Insurance Services Office. Inc.,with its permission.

Copyright, Insurance Services Office, Inc. 1999

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 53 of 72   PageID #: 53

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## OTHER STRUCTURES ENDORSEMENT
### SECTION I ONLY

In consideration of the premium charged, the following provisions apply:

**COVERAGE B -- Other Structures**

1) If there are no other structures, the limit of liability shown for Coverage B shall be added to the limit of liability Coverage A and the sum of the two shall be the limit of liability under Coverage A.

2) If there are other structures and at time of loss the limit of liability for Coverage B exceeds the replacement cost of other structures. the amount of insurance in excess of the replacement cost shall be applied as an additional amount of insurance under Coverage A.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 54 of 72   PageID #: 54

## SINKHOLE COLLAPSE

We insure for direct physical loss to property covered under Section I caused by Sinkhole Collapse.

Sinkhole Collapse means actual physical damage arising out of, or caused by, sudden settlement or collapse of the earth supporting such property and only when such settlement or collapse results from subterranean voids created by the action of water on limestone or similar rock formations.

The Section I -- **Earth Movement** exclusion does not apply to Sinkhole Collapse.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office. Inc.,
with its permission.

Copyright, Insurance Services Office, Inc., 1984

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROVISIONS - TENNESSEE

### DEFINITIONS

In forms HO 2, HO 3, HO 4, HO 5 and HO 6, the following definition has been added:

"Named Insured" means the first listed "insured" on the policy.

### SECTION I – PROPERTY COVERAGES

In forms HO 2, HO 3 and HO5, under **C. 3. Special Limits of Liability**, item **j.** (item **A. 3. j.** in HO 4 and item **B. 3. j.** in HO 6) is deleted and replaced by the following:

**j.** $1,500 for electronic equipment and antennas, while in or upon a "motor vehicle". This coverage applies only if such equipment can be operated by power from the "motor vehicle's" electrical system while still having the ability to be operated by other power sources.

In forms HO 2, HO 3 and HO5, under **C. 3. Special Limits of Liability**, item **k.** (item **A. 3. k.** in HO 4 and item **B. 3. k.** in HO 6) is deleted and replaced by the following:

**k.** $1,500 for electronic equipment and antennas used primarily for "business", while away from the "residence premises" and not in or upon a "motor vehicle". Such equipment must be capable of being operated by power from the "motor vehicle's" electrical system while still having the ability to be operated by other power sources.

In forms HO 2, HO 3 and HO5, under **C. 4. Property Not Covered**, item c. "Motor vehicles" (item **A. 4. c.** in HO 4 and item **B. 4. c.** in HO 6) is deleted and replaced by the following:

**c.** "Motor vehicles" or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:

1) their parts or equipment, whether attached to or separated from the "motor vehicle" or motorized land conveyance; or

2) accessory equipment; or

3) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can only be operated by the power from the electrical system of the "motor vehicle" or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most we will pay is $300 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

We do cover vehicles or conveyances not subject to motor vehicle registration which are:

1) used solely to service the "insured's" residence;

2) designed to assist the handicapped; or

3) a motorized golf cart while being operated to or from, or on the premises of a golf course.

In Forms **HO 2, HO 3** and **HO 5, E. 4. Fire Department Service Charge** is deleted and replaced by the following:

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract, agreement, ordinance or statute for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against.

This coverage is additional insurance. No deductible applies to this coverage.

In Form **HO 4, C. 4. Fire Department Service Charge** is deleted and replaced by the following:

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract, agreement, ordinance or statute for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against.

This coverage is additional insurance. No deductible applies to this coverage.

In Form **HO 6, D. 4. Fire Department Service Charge** is deleted and replaced by the following:

**4. Fire Department Service Charge**

We will pay up to $500 for your liability assumed by contract, agreement, ordinance or statute for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 58 of 72   PageID #: 58

This coverage is additional insurance. No deductible applies to this coverage.

In Form **HO 5**, under **E. 10. Landlord's Furnishings, k. 2) e)** is added:

e. Caused by constant or repeated seepage or leakage over a period of weeks, months or years.

## SECTION I – PERILS INSURED AGAINST

Item **A. 2. c. 6) g)** in form **HO 3** is deleted and replaced by the following:

g) Birds, vermin, rodents or insects; or animals owned or kept by an "insured";

Item **A. 2. e. 7)** in form **HO 5** is deleted and replaced by the following:

7) Birds, vermin, rodents or insects; or animals owned or kept by an "insured";

In Forms **HO 2** and **HO 4**, under **12. Accidental Discharge Or Overflow Of Water Or Steam, b. 5)** is added:

5) Caused by constant or repeated seepage or leakage over a period of weeks, months or years.

In Form **HO 3**, under **B. 12. Accidental Discharge Or Overflow Of Water Or Steam, b. 5)** is added:

5) Caused by constant or repeated seepage or leakage over a period of weeks, months or years.

In Form **HO 5**, under **A.**, the first paragraph of **2. d.** is deleted and replaced by:

d. Constant or repeated seepage or leakage over a period of weeks, months or years from within:

1) A plumbing, heating, air conditioning or automatic fire protective sprinkler system or a household appliance on the "residence premises"; or

2) A storm drain or water, steam or sewer pipes off the "residence premises".

In Form **HO-6**, under **12. Accidental Discharge or Overflow of Water Or Steam, b.6)** is added:

6) Caused by constant or repeated seepage or leakage over a period of weeks, months or years.

## SECTION I - EXCLUSIONS

The first paragraph of Exclusion **B.** in forms **HO-3** and **HO-5** is deleted and replaced with the following:

**B.** We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not excluded or excepted in this policy is covered.

## SECTIONS I - CONDITIONS

In forms **HO 2**, **HO 3** and **HO 5**, Item **C. 2.c** under **Loss Settlement** is deleted and replaced by the following:

c. If you receive a settlement under this policy for loss or damage to buildings on an "actual cash value" basis, you may then make an additional claim for payment on a replacement cost basis provided:

1) Repair or replacement is completed within 1 year of the date of the loss, unless you request in writing that this time limit be extended for an additional 180 days; and

2) Repair or Replacement is evidenced by the original of the replacement receipt, invoice or bill; and

3) You have not reached the applicable limit of liability under this policy.

In form **HO 6**, **F. Other Insurance and Service Agreement** is deleted and replaced by the following:

**F. Other Insurance and Service Agreement**

1. If a loss covered by this policy is also covered by:

   a. Other insurance, except insurance in the name of a corporation or association of property owners, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss; or

   b. A service agreement, except a service agreement in the name of a corporation or association of property owners, this insurance is excess over any amounts payable under any such agreement. Service agreement means a service plan, property restoration plan, home warranty or other similar service warranty agreement, even if it is characterized as insurance.

2. If, at the time of loss, there is other insurance or a service agreement in the name of a corporation or association of property owners covering the same property covered by this policy, this insurance will be excess over the amount recoverable under such other insurance or service agreement.

**K. Mortgage Clause**

The following Paragraph **6.** is added:

6. The rights and obligations set forth in paragraphs **1.** through **5.** above apply to any

party who has an insurable interest in the "residence premises" who is not an "insured".

## SECTIONS I AND II – CONDITIONS

In forms **HO 2, HO 3, HO 4, HO 5** and **HO 6, C. Cancellation** is deleted and replaced by the following:

### C. Cancellation

1. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

2. We may cancel this policy only for the reasons stated below by letting the named insured know in writing of the date cancellation takes effect. This cancellation notice may be delivered to the named insured, or mailed to the named insured at the named insured's mailing address shown in the Declarations. Proof of mailing will be sufficient proof of notice.

   a. When you have not paid the premium, we may cancel at any time by letting the named insured know at least 10 days before the date cancellation takes effect.

   b. When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting the named insured know at least 10 days before the date cancellation takes effect.

   c. When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      1) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

      2) If the risk has changed substantially since the policy was issued.

This can be done by letting the named insured know at least 30 days before the date cancellation takes effect.

   d. When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting the named insured know at least 30 days before the date cancellation takes effect.

3. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata.

4. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

In forms **HO 2, HO 3, HO 4, HO 5** and **HO 6, D. Nonrenewal** is deleted and replaced by the following:

### D. Nonrenewal

We may elect not to renew this policy. We may do so by delivering to the named insured, or mailing to the named insured at the named insured's mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

In Forms **HO 2, HO 3, HO 5,** and **HO 6, H. Dwelling** is deleted and replaced by the following:

### H. Dwelling

We insure the dwelling, as described in the declarations of this policy, only as the "residence premises", while occupied the "Insured" as the owner, for dwelling purposes and not otherwise. This condition applies, at the time of loss, to **COVERAGE A – Dwelling, COVERAGE B – Other Structures** and **COVERAGE C – Personal Property** as provided by this contract.

All other provisions of this policy apply.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2001

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 60 of 72   PageID #: 60

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DWELLING REPLACEMENT COST

In return for your having:

1) furnished us accurate information for replacement cost estimation,

2) insured your dwelling to at least 100% of its replacement cost as determined by an Allied replacement cost estimation or an inspection performed by a recognized appraisal agency authorized by Allied,

3) paid the additional premium, and

4) agreed to notify us within 90 days of the start of any alterations which increase the replacement cost of your dwelling more than $5,000, and pay any resulting additional premium;

we will settle covered losses to the dwelling under Coverage **A**, up to 125% of the limit of liability shown in the Declarations for Coverage **A** as follows:

1) we will pay the cost of repair or replacement, but not exceeding the replacement cost of that part of the building damaged, for like construction and use on the same premises;

2) we will pay the actual cash value of the damage until actual repair or replacement is completed;

3) you may disregard these loss settlement provisions and make claim under this policy for loss or damage on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

This endorsement does not increase the coverage limits of Coverage **B, C** or **D** of the attached policy.

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 62 of 72   PageID #: 62

## PERSONAL PROPERTY
## REPLACEMENT COST ENDORSEMENT

I.  It is agreed that provisions of this policy applicable to Coverage C -- Unscheduled Personal Property are amended to substitute the term "replacement cost" for the term "actual cash value" wherever it appears, subject to the following exclusions, conditions and definition.

II. It is further agreed that Additional Conditions -- Replacement Cost -- Coverages A and B of the policy to which this endorsement is attached, insofar as it relates to the exclusion of outdoor radio and television aerials, carpeting, awnings, domestic appliances and outdoor equipment is hereby amended, and that loss from a covered peril to those items shall be adjusted on a "replacement cost" basis rather than on an "actual cash value" basis, subject to the following exclusions, conditions and definition.

### EXCLUSIONS

THE COMPANY SHALL NOT BE LIABLE UNDER THIS ENDORSEMENT FOR REPLACEMENT COST FOR LOSS OR DAMAGE TO:

1.  PAINTINGS, ETCHINGS, PICTURES, TAPESTRIES, STATUARY, ARTICLES MADE OF MARBLE, BRONZES, ANTIQUES, RARE BOOKS, PORCELAINS, RARE GLASSWARE OR ANY OTHER ARTICLES WHICH, BECAUSE OF THEIR INHERENT NATURE, CANNOT BE REPLACED WITH NEW ARTICLES.

2.  ARTICLES WHOSE AGE OR HISTORY CONTRIBUTE SUBSTANTIALLY TO THEIR VALUE INCLUDING, BUT NOT LIMITED TO, MEMORABILIA, SOUVENIRS AND COLLECTORS ITEMS.

3.  PROPERTY OF OTHERS.

### CONDITIONS

A.  THE COMPANY SHALL ONLY BE LIABLE UNDER THIS ENDORSEMENT:

1.  FOR ANY LOSS TO PROPERTY OWNED BY AN INSURED;

2.  FOR ANY LOSS TO PROPERTY WHICH HAS BEEN MAINTAINED IN GOOD AND WORKABLE CONDITION AND IS BEING USED OR STORED FOR USE BY THE INSURED;

3.  WHEN THE DAMAGED, DESTROYED, OR STOLEN PROPERTY HAS ACTUALLY BEEN REPAIRED OR RE-PLACED BY THE INSURED;

B.  PERSONAL PROPERTY REPLACEMENT COST COVERAGE WILL ALSO APPLY TO THE FOLLOWING ARTICLES OR CLASSES OF PROPERTY IF THEY ARE SEPARATELY DESCRIBED AND SPECIFICALLY INSURED IN THIS POLICY:

1.  JEWELRY;

2.  FURS AND GARMENTS TRIMMED WITH FUR OR CONSISTING PRINCIPALLY OF FUR;

3.  CAMERAS, PROJECTION MACHINES, FILMS AND RELATED ARTICLES OF EQUIPMENT;

4.  MUSICAL EQUIPMENT AND RELATED ARTICLES OF EQUIPMENT;

5.  SILVERWARE, SILVER-PLATED WARE, GOLDWARE, GOLD-PLATED WARE AND PEWTERWARE, BUT EX-CLUDING PENS, PENCILS, FLASKS, SMOKING IMPLEMENTS OR JEWELRY; AND

6.  GOLFER'S EQUIPMENT MEANING GOLF CLUBS, GOLF CLOTHING AND GOLF EQUIPMENT.

PERSONAL PROPERTY REPLACEMENT COST COVERAGE WILL NOT APPLY TO OTHER CLASSES OF PROPERTY SEPARATELY DESCRIBED AND SPECIFICALLY INSURED.

HA 00100372451          08/15/07                          INSURED COPY                                    71  00112

C.  THE COMPANY'S LIABILITY FOR LOSS UNDER THIS ENDORSEMENT SHALL NOT EXCEED THE SMALLEST OF THE FOLLOWING AMOUNTS:

    1.  THE LIMIT OF LIABILITY OF THIS POLICY APPLICABLE TO THE DAMAGED, DESTROYED, OR STOLEN PROPERTY;

    2.  THE REPLACEMENT COST OF THE PROPERTY OR ANY PART THEREOF; OR

    3.  THE AMOUNT ACTUALLY AND NECESSARILY SPENT BY THE INSURED IN REPAIRING THE PROPERTY OR ANY PART THEREOF.

D.  THE COMPANY RESERVES THE RIGHT TO REPLACE AT ITS COST ANY ITEM(S) DAMAGED, DESTROYED, OR STOLEN WITHOUT OBLIGATION TO REPLACE ALL ITEMS.

E.  YOU MAY MAKE A CLAIM FOR LOSS ON AN ACTUAL CASH VALUE BASIS AND THEN MAKE CLAIM WITHIN 180 DAYS AFTER THE LOSS FOR ANY ADDITIONAL LIABILITY IN ACCORDANCE WITH THIS ENDORSEMENT.

F.  REPAIR OR REPLACEMENT MUST BE COMPLETED WITHIN A REASONABLE TIME AFTER LOSS OR DAMAGE, EVIDENCED BY THE ORIGINAL OF THE REPLACEMENT RECEIPT, INVOICE OR BILL.

## DEFINITION OF REPLACEMENT COST

"REPLACEMENT COST" means the cost, at the time of loss, of a new article identical to the one damaged, destroyed or stolen. When the identical article is no longer manufactured or is not available, replacement cost shall mean the cost of a new article similar to that damaged, destroyed, or stolen and which is of comparable quality and usefulness.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PREMISES ALARM OR
## FIRE PROTECTION SYSTEM

For a premium credit, we acknowledge the installation of an alarm system and/or automatic sprinkler system approved by us on the "residence premises." You agree to maintain this system or systems, for which we have granted a credit, in working order and to let us know promptly of any change, including removal, made to the system(s).

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc. 1990

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 66 of 72   PageID #: 66

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FUNGI OR BACTERIA ENDORSEMENT

FOR USE WITH FORMS HO3 and HO5

### SCHEDULE*

The limit of liability applies to the total of all loss payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule.

| | |
|---|---|
| **Section I - Property Coverage Limit of Liability for the Additional Coverage "Fungi" Or Bacteria** | **$ 10,000** |

*Entries may be left blank if shown elsewhere in this policy for this coverage.

### DEFINITIONS

The following definition is added:

**"Fungi"**

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

### SECTION I - PROPERTY COVERAGES

### E.  ADDITIONAL COVERAGES

Paragraph **10.k.2)d)** is deleted and replaced with the following in Form HO5 only;

  **d)**  Caused by wet rot.

The following Additional Coverage is Added:

**14.  RESERVED FOR FUTURE USE**

**15.  RESERVED FOR FUTURE USE**

**16.  RESERVED FOR FUTURE USE**

**17.  RESERVED FOR FUTURE USE**

**18.  "Fungi" Or Bacteria**

  **a.**  The amount shown in the Schedule above is the most we will pay for:

   **1)**  The total of all loss payable under Section I - Property Coverages caused by "fungi" or bacteria;

   **2)**  The cost to remove "fungi" or bacteria from property covered under Section I - Property Coverages:

   **3)**  The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi" or bacteria; and

   **4)**  The cost of testing of air or property to confirm the absence, presence or level of "fungi" or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi" or bacteria.

  **b.**  The coverage described in **18.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

  **c.**  The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

   **1)**  Number of locations insured under this endorsement; or

   **2)**  Number of claims made.

HA 00100372451          08/15/07                    INSURED COPY                              71  00115

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 68 of 72   PageID #: 68

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I - PERILS INSURED AGAINST

In Form HO3:

A. **COVERAGE A - Dwelling and COVERAGE B - Other Structures**

Paragraph 2.c.6)c) is deleted and replaced by the following:

    c) Smog, rust or other corrosion, wet or dry rot;

B. **COVERAGE C - Personal Property**

  **12. Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph b.4) is deleted and replaced by the following:

    4) Caused by wet rot.

In Form HO5:

A. Under Coverages **A, B** and **C:**

Paragraph 2.e.3) is deleted and replaced by the following:

    3) Smog, rust or other corrosion, wet or dry rot;

## SECTION I - EXCLUSIONS

Exclusion **C.** is added.

C. We will not pay for loss or damage caused directly or indirectly by or resulting from "fungi" or bacteria of any type regardless of the cause of the growth, proliferation or accretion except as provided by Section I - Additional Coverages **18. "Fungi" or Bacteria.**

## SECTION II - EXCLUSIONS

Under **E. COVERAGE E - Personal Liability and COVERAGE F - Medical Payments To Others, 11.** (or **16.** if the Home Business Endorsement **(HE285)** is present) **"Fungi" or Bacteria** is added.

  **11. "Fungi" or Bacteria**

"Bodily injury", "property damage", or, where added by endorsement, "personal injury" which would not have occurred in whole or in part but for:

"Fungi" or bacteria injury or damage including, but not limited to, any injury or damage arising out of or alleged to have arisen out of any act, error, omission, failure to warn or other duty involving "fungi" or bacteria, its exposure, existence, detection, removal, elimination or avoidance or actions arising from a failure to disclose the presence of "fungi" or bacteria.

The provisions of the policy apply unless modified by this endorsement.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc. 2001

Case 4:08-cv-00039-SKL   Document 1   Filed 05/14/08   Page 69 of 72   PageID #: 69

IN THE CIRCUIT COURT OF WARREN COUNTY, TENNESSEE

JESSE ANTHONY ROBERTS,                    )
                                          )
    Plaintiff,                           )
                                          )
vs.                                       )     Civil Action No. 2780
                                          )     Jury Demanded
NATIONWIDE INSURANCE SALES, LLC,          )
ALLIED INSURANCE, AMCO INSURANCE          )
COMPANY, and HOOVER AND SON               )
INSURANCE,                                )
                                          )
    Defendants.                          )

## BRIEF IN SUPPORT OF MOTION TO DISMISS

### STATEMENT OF FACTS

The plaintiff, Jesse Anthony Roberts, approached Hoover & Son for the purpose of obtaining an insurance policy on his home located at 629 Hennessee Avenue in Morrison, Tennessee. Hoover & Son is an insurance agency that brokers insurance policies on behalf of a number of insurance companies including AMCO Insurance Company. Hoover & Son does not sell insurance nor do they enter into insurance contracts with homeowners. They are an insurance agency that acts as an intermediary between various insurance companies looking to sell insurance and the homeowners looking to purchase insurance. As for AMCO Insurance Company, it is owned by Allied Group Incorporated which is a subsidiary of Nationwide Mutual Insurance Company. (Not Nationwide Insurance Salles, LLC, an inactive corporation.

On July 10, 2006, Jesse Anthony Roberts was issued a homeowner's policy, number HA 0010037245-1, from AMCO Insurance Company covering his home for the period of July 28, 2006 through July 28, 2007. The insurance policy, which was nothing more than a contract, was between AMCO Insurance Company and Jesse Roberts. Neither Hoover & Son nor Nationwide Insurance Sales, LLC were parties to the contract. Hoover & Son was the insurance agency and was listed as such on the policy's declarations page. As for Nationwide, they were simply noted as being the parent company of Allied Insurance Company.

On October 30, 2006, Jesse Roberts' home was damaged by fire. Jesse Roberts filed a claim with AMCO Insurance Company for the damage to his home and the contents that were destroyed during the fire. He proceeded to file a sworn proof of loss alleging that the home was worth $91,200 and the total value of the claim including the contents was $154,540. After conducting its investigation, AMCO Insurance Company denied the claim on a number of grounds including their belief that Jesse Roberts intentionally set the house on fire for the purpose of obtaining the insurance proceeds and that he made misrepresentations during the investigation sufficient to deny the claim. Hoover & Son and Nationwide Insurance Sales, LLC, not being parties to the insurance contract, were not involved in the investigation of this claim. Furthermore, they had no say as to whether or not the claim would be paid or denied.

"Exhibit B"

Upon having his claim denied, Jesse Roberts filed suit in the Circuit Court for Warren County, Tennessee against Nationwide Insurance Sales, LLC, Allied Insurance Company, AMCO Insurance Company and Hoover & Son. In the Complaint, Jesse Roberts alleges that the defendants refused to pay under the policy and he was seeking $154,540 for the damage to his home and his personal property within as well as a bad faith penalty of twenty five percent.

## LEGAL ARGUMENT

A review of the plaintiff's complaint will show that the plaintiff's claim is based on the breach of an insurance contract. The plaintiff alleges that he obtained an insurance policy on his home and that the insurance company refused to pay when his home was destroyed by fire. (Complaint, paragraphs 2, 4, and 5). In this case, the parties to the insurance contract on the plaintiff's home are the plaintiff and AMCO Insurance Company. (AMCO Insurance Company Homeowner's policy). The policy lists Jesse Roberts as the named insured and AMCO Insurance Company as the insurance company. *Id.* Hoover & Son is not a party to the contract. *Id.* They merely arranged the deal between the plaintiff and AMCO Insurance Company and are listed as an agency *Id.* With the plaintiff's claim being for a breach of the insurance contract, Hoover & Son cannot be held liable in that they are not a party to the contract. As such, they could not have breached the contract as alleged in the complaint.

Additionally, there are no other allegations or counts in the complaint that could apply to Hoover & Son to hold them liable as the insurance agency. The complaint essentially contains two main counts. First, in paragraph 4, it alleges the plaintiff is entitled to recover under the insurance policy and that the defendant has failed and refused to make payment to the plaintiff under such policy. As discussed above, Hoover & Son is not a party to the insurance contract and therefore is under no obligation to pay the plaintiff anything. That obligation lies with the insurance company which in this case is either AMCO Insurance Company or Allied Insurance Company. Second, in paragraph 5, the plaintiff alleges that the failure to pay under the policy was without justification and in bad faith. Therefore the plaintiff is entitled to a twenty five percent bad faith penalty pursuant to T.C.A. 56-7-105. Again, Hoover & Son is not a party to the contract and is under no obligation to pay. Only a party to the insurance contract can be found to have acted in bad faith for refusing to pay under the contract. *See generally* T.C.A. 56-7-105. In this case, it is the insurance company, not the insurance agency, who would be liable if it were shown that the claim was denied in bad faith. As such, there are no allegations contained in the complaint that would apply to Hoover & Son for the purpose of holding them liable as the insurance agent.

The same arguments apply to Nationwide. Nationwide was not a party to the insurance contract between the plaintiff and AMCO Insurance Company. (AMCO Insurance Company Homeowner's policy). Nationwide was simply noted as being the parent company of Allied Insurance Company on the declarations page. *Id.* With Nationwide not being a party to the contract, they could not be liable for a breach of the contract as alleged in the complaint. Furthermore, there are no allegations in the complaint that could be used to hold Nationwide liable as the parent company of Allied Insurance Company. The complaint simply alleges that the defendants refused to pay under the insurance policy which is insufficient to place any liability on Nationwide.

## CONCLUSION

In conclusion, with Hoover & Son and Nationwide not being parties to the insurance contract and with the complaint containing no allegations that would apply to Hoover & Son as the insurance agent or Nationwide as the parent company of Allied Insurance Company, the plaintiff has failed to state a claim against Hoover & Son and Nationwide upon which relief can be granted. As such, Hoover & Son and Nationwide respectfully requests that the Court grant their motion and dismiss the case against them.

Respectfully submitted,

MADEWELL, JARED, HALFACRE & WILLIAMS

By _____

James D. Madewell (#3337)
Attorney for Defendants
230 North Washington Avenue
Post Office Box 721
Cookeville, Tn 38503-0721
(931) 526-6101

### CERTIFICATE OF SERVICE

I, the undersigned attorney, do hereby certify that a true and correct copy of the foregoing document has been delivered to all counsel for parties at interest in this cause by placing a true and correct copy of same in the United States Mail, postage prepaid, in a properly addressed envelope to: Mr. Bud Sharp, Attorney for Plaintiff, 100 Center Street, Suite B, McMinnville, TN 37110

This the ___ day of _____ ,2008.

_____
Attorney